### SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

### CREDIT BANCORP, LTD., et al., Defendants.

### No. 99 CIV. 11395 RWS.

United States District Court, S.D. New York.

June 15, 2000.

Salt Lake City, UT (Thomas M. Melton, of counsel), S.E.C., New York City (Robert Blackburn, of counsel), for Plaintiff.

Morrison & Foerster, New York City by Carl H. Loewenson, Receiver and Fiscal Agent, for Receiver.

McCambridge, Deixler & Marmaro, Los Angeles, CA (Richard Marmaro, of counsel), for Defendant Richard Jonathan Blech.

Milbank, Tweed, Hadley & McCloy, New York City (Andrew Tomback, of counsel), for Defendant Thomas Michael Rittweger.

Getty, Keyser & Mayo, Lexington, KY (Richard A. Getty, of counsel), for Defendant Douglas C. Brandon.

Rosenman & Colin, New York City (Joel W. Sternman, of counsel), Stoel Rives, Portland, or (Joel A. Mullin, Scott J. Kaplan, of counsel), for Intervenor Robert Praegitzer.

Barger & Wolen, New York City (Michael J. Levin, of counsel), for Intervenor Centigram Communications Corp.

Lambos & Junge, New York City (Armand P. Mele, of counsel), for Intervenors.

Stephen J. Cole-Hatchard, Cole-Hatchard Family Limited Partnership, Nicko Feinberg and Michael Olbermann, Sheldon A. Weiss, Mountainside, NJ, for Intervenor Robert Praegitzer.

Hogan & Hartson, New York City (Lyndon M. Tretter, of counsel), for Intervenor Gene W. Ray.

## MEMO OPINION

SWEET, District Judge.

By Notice of Motion dated April 10, 2000, the law firm of Baker & McKenzie moved for clarification concerning ownership of the retainer paid to Baker & McKenzie for services rendered prior to the November 17, 1999 asset freeze order in this action. This motion is opposed by Carl H. Loewenson, Jr. (the "Receiver"). Oral argument was held on May 3, 2000, at which time the matter was deemed fully submitted.

### Facts

Prior to the commencement of this action, in January 1998, Baker & McKenzie was retained by Credit Bancorp, Ltd. ("Credit Bancorp") to perform certain legal services. Pursuant to the engagement letter of May 21, 1999, Credit Bancorp deposited funds into a client trust account (the "Trust Account") at Baker & McKenzie (the "Trust Funds").

The relevant paragraph of the engagement letter from Baker & McKenzie to Credit Bancorp states:

As agreed, you are providing us as initial fee in the amount of $100,000, to be delivered as soon as practicable (account details will follow upon acceptance of these terms). This amount will be held in our Trust Account, and we will apply all or a part of that advance in payment of our monthly billing. Subsequent developments in the matter may warrant an appropriate increase or decrease in the amount of the retainer. Upon conclusion of our work for you, we will credit the balance in out Trust Account to our final invoice, and we will return any excess amount to you.

On June 29, 1999, Baker & McKenzie billed Credit Bancorp for legal services, and on or about the same date caused that amount to be transferred from the initial deposit by Credit Bancorp of $100,000 being held in the Trust Account. Subsequently, Credit Bancorp "replenished" the amount in the Trust Account with two payments of $100,000 each on July 7, 1999 and July 29, 1999.

Due to an unspecified "clerical error," Baker & McKenzie did not send any further invoices to Credit Bancorp until November 16, 1999, hours before the asset freeze was entered in this action. Due to a further unspecified clerical error, Baker & McKenzie did not draw down the Trust Funds to pay any of these invoices prior to the imposition of the asset freeze. As of the asset freeze order, the amount held in this account was $201,144.99. These funds had not been drawn down on or about November 19, 1999, which is when Baker & McKenzie asserts that it became aware of the existence of this action and the asset freeze. Baker & McKenzie further states that it determined in good faith not to draw down the funds at that point pending clarification by this Court.

### Discussion

### Baker & McKenzie Did Not Own The Funds As Of The Asset Freeze

Baker & McKenzie requests that this Court clarify that the Trust Funds are a Baker & McKenzie asset in which Credit Bancorp has no interest. If Credit Bancorp has no interest in these funds then the funds are not part of the receivership estate and are not subject to the asset freeze. Baker & McKenzie seeks this clarification so that it may transfer those funds from the client trust account to the firm's account and apply them to its outstanding Credit Bancorp invoices totalling more than $302,532.79.

The question of whether Baker & McKenzie is entitled to draw down the Trust Funds turns on whether those funds were still the property of Credit Bancorp as of the imposition of the asset freeze or whether instead they were already the property of Baker & McKenzie. Baker & McKenzie contends that it obtained ownership of the funds at the time that it rendered services to Credit Bancorp. The Receiver responds that there was no change in ownership unless and until Baker & McKenzie actually transferred any funds in the Trust Account and, therefore, that it cannot claim ownership of the funds in the account as of November 17, 1999.

■ Generally speaking, funds held in an escrow account, such as an attorney trust account, are considered to be funds owned by the client and held by the attorney in a fiduciary capacity. *See Gala Enters., Inc. v. Hewlett Packard Co.*, 970 F.Supp. 212, 217 (S.D.N.Y.1997). In *Securities and Exch. Comm'n v. Princeton Economic Int'l Ltd.*, 84 F.Supp.2d 443 (S.D.N.Y.2000), the court also had to determine whether funds deposited by a company into client trust accounts at its three law firms were subject to an asset freeze imposed pursuant to a Securities and Exchange Commission ("SEC") investigation and a receivership. The court held that any funds that were still held in the client trust accounts "at the hour of the signing of the freeze order" were still owned by the client company, rather than by the law firms, and therefore were subject to the freeze order. *Id.* at 446.

■ Baker & McKenzie seeks to distinguish *Princeton* on the ground that the law firms in that case knew or should have known that the monies put into the client trust accounts could be subject to forfeiture because the firms were hired in connection with the SEC investigation itself. *Princeton*, 84 F.Supp.2d at 446–47. While this circumstance did provide additional support for attaching the funds, however, it was not a necessary condition to the holding in *Princeton*. *See Princeton*, 84 F.Supp.2d at 446. Nor is it in the instant case. The fact remains that here, as in *Princeton*, the Trust Funds were still held

in the Trust Account "at the hour of the signing of the freeze order," and were the property of the client Credit Bancorp at that moment. *Id.*

Baker & McKenzie also contends that it is entitled to the Trust Funds because it had already rendered the services which would have entitled it to draw down the Trust Account prior to the freeze order, although it had not actually done so. Baker & McKenzie relies primarily on *Securities and Exch. Comm'n v. Interlink Data Network of Los Angeles, Inc.*, 77 F.3d 1201 (9th Cir.1996) for the general proposition that ownership of a retainer passes to the law firm at the time services are rendered. The court in *Interlink* confronted a somewhat different factual situation than the one herein. In *Interlink*, the law firm contended that under its retainer agreement it became the owner of funds paid in advance *at the time of payment. See Interlink*, 77 F.3d at 1204. The court analyzed the retainer agreement and concluded, based on the terms of that agreement, that the firm was entitled to the portion of the funds for which services had been rendered prior to the freeze order rather than based on the date of payment. *See id.* at 1204–06. *Interlink* does not stand for a general proposition of law dictating that this Court conclude that ownership of the Credit Bancorp Trust Fund passed to Baker & McKenzie at the time services were rendered.[1]

The terms of the fee agreement at issue in the instant case support the conclusion that the Trust Funds did not become the property of Baker & McKenzie until a transfer from the Trust Account to the firm's general account was actually effectuated. In this agreement, Baker & McKenzie states that the retainer funds "will be held" in the Trust Account and that Baker & McKenzie "will apply all or a part of that advance in payment of [its] monthly billing." The agreement does not provide that funds automatically become the property of Baker & McKenzie as services are rendered but, instead, requires that Baker & McKenzie take affirmative steps to "apply" the Trust Funds to its own account. These steps were above and beyond those involved in generating and sending out invoices. The agreement provides for an element of discretion on the part of Baker & McKenzie both as to whether to apply the funds in this manner and the timing thereof. In addition, as Baker & McKenzie notes in its legal memorandum, under the terms of the engagement letter Baker & McKenzie obtained payment for legal services either from the retainer or in the form of direct payment from Credit Bancorp. Finally, the agreement provides that any monies remaining in the Trust Account at the end of the engagement will be refunded to Credit Bancorp.

Thus, the terms of the fee agreement indicate that the transfer of ownership over the Trust Funds was not automatic upon the rendering of services—nor even when invoices were rendered. Therefore, the monies remaining in the Trust Account at the time of the freeze order were still the property of Credit Bancorp.

Finally, Baker & McKenzie also cites to Singapore law in support of its contention that it owned the Trust Funds as of the asset freeze. Assuming arguendo that Singapore law applied—a proposition for which Baker & McKenzie does not provide legal authority—it would not change the result herein. Singapore Legal Profession

---

1. Baker & McKenzie also relies on *Gala,* 970 F.Supp. 212. That case did not arise in the context of an SEC action and receivership estate, but did concern the extent to which a law firm had rights over retainer funds deposited with the firm where the client's assets subsequently became subject to attachment by a judgment creditor. *See Gala,* 970 F.Supp. at 214–15. The court analyzed the terms of the three different retainer agreements before it. *See id.* at 219–221. Pursuant to its interpretation of these agreements, the court permitted certain funds to be exempted from attachment, including monies for expenses incurred by the firm prior to the attachment order. *See id.* at 221. However, as discussed herein, the terms of the Baker & McKenzie engagement letter do not support such a holding here.

Rule 7(1)(a) permits attorneys pursuant to certain kinds of fee arrangements to draw funds from a client account after presentation of a bill to the client. *See* Singapore Legal Prof. R. 7(1)(a) (funds "may be drawn" from client account); *see also Chia Ah Sim v. Ronny Chong & Co.,* 1993 SLR LEXIS 535, at *17 (High Court, Feb. 2, 1993) (client account funds "can be withdrawn" after bill delivered). Permission to withdraw such funds, however, does not mean that transfer of ownership over those funds occurs automatically.

### Entitlement To A Set Off

The conclusion that the Trust Funds are owned by Credit Bancorp—and therefore, by the Receivership estate—rather than by Baker & McKenzie, does not mean that Baker & McKenzie may not assert a claim like any other creditor. In this regard, the Court notes that Baker & McKenzie has raised the argument that, even if the Trust Funds are a Credit Bancorp asset, it is entitled to "preferential treatment" over other Credit Bancorp creditors in the form of an offset for Credit Bancorp's indebtedness for unpaid legal services. The value of those unpaid services, according to Baker & McKenzie, is more than $302,532.79.

It would be premature at this juncture for the Court to determine whether Baker & McKenzie is entitled to be treated differently from other creditors. Two proposed plans for a partial distribution of the receivership estate, one submitted by the SEC and one submitted by counsel for certain intervenors, are presently before the Court for consideration. The Court is accepting customer comments on these proposals through June 28, 2000. The Court will also accept comments from Baker & McKenzie by that date regarding any entitlement to raise its offset claim in relation to the proposed partial distribution and how the Court should treat such a claim.

It is so ordered.